UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARTHUR J. KESSLER,

    Petitioner,

v.                                                                   Case No. 8:05-cv-55-T-23TGW

SECRETARY, Department of Corrections,

    Respondent.
_____/

## O R D E R

Kessler petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges eight convictions:  two convictions for burglary of a dwelling and one of a structure, three convictions for dealing in stolen property, and two convictions for grand theft and one for petit theft.  Kessler is serving thirty years as a violent career criminal.  Numerous exhibits ("Respondent's Exhibit __") support the response (Doc. 4).  The respondent admits that Kessler exhausted the grounds asserted in the petition (Response at 14 Doc. 4).  The respondent offers no challenge to the timeliness of the petition.

## **FACTS**[1]

In June, 2000, Terry Hoit moved into a trailer immediately after Kessler moved out.  Hoit was away from his residence the weekend of July 15, 2000.  Upon his return, Hoit discovered that his new videocassette recorder ("VCR") was missing.  The

---

[1] This summary of the facts derives from Kessler's brief on direct appeal (Respondent's Exhibit 2).

residence was fully locked and without any sign of a forced entry.  Hoit opined that the burglar must have had a key to the residence.  He advised the police that Kessler was possibly the burglar because he believed Kessler was a maintenance man at the trailer park and because Kessler was the prior occupant of the residence.

David Edwards testified that on the weekend of July 15, 2000, while at a gas station a man approached him trying to sell a VCR, which Edwards purchased for twelve dollars.  A few days later Edwards contacted the police to determine whether the VCR was stolen.  The police showed Edwards a photo-pak; Edwards identified the man who sold him the VCR.  The person who accompanied Edwards to the gas station also identified the man from the photo-pak.  Edwards later realized that he had worked with the individual at a prior job.  Edwards contacted his former employer, who identified the co-worker as Kessler.

During an interview with the police, Kessler orally admitted to entering Hoit's residence and removing the VCR, which he sold for twelve dollars to support his drug habit.  Kessler also provided the police with a written statement.

Based on the above facts, a jury found Kessler guilty of burglary of a dwelling, dealing in stolen property, and petit theft as charged in case number 00-12539 (theft of a VCR).  A month later and before sentencing for the above conviction, Kessler pleaded guilty in both 00-13062 (burglary of a structure and grand theft) (theft of automobile wheel rims) and 00-13063 (burglary of a dwelling, dealing in stolen property, and grand theft) (theft of a gold necklace).  Kessler's petition for the writ of habeas corpus challenges the convictions from all three cases.  In ground one Kessler challenges the validity of his conviction in the theft of the VCR case and in ground two Kessler

challenges the validity of his pleas in the other two cases.  Both grounds are based on claims of ineffective assistance of counsel.

## STANDARD OF REVIEW

Because this action commenced after April 24, 1996, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding.  Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a

- 3 -

> conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

The state appellate court affirmed (Respondent's Exhibit 4) Kessler's convictions and sentences on direct appeal in a per curiam decision without a written opinion, and likewise affirmed (Respondent's Exhibit 10) the denial of his subsequent Rule 3.850 motion for post-conviction relief.  The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Kessler bears the burden of overcoming a state court factual determination by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert.

denied, 534 U.S. 1046 (2001). Consequently, this court must defer to the finding of fact in the state court's rejection of Kessler's post-conviction claims (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 6 at 188 and 330).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Kessler claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)). Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate

- 5 -

assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Kessler must demonstrate that error by counsel prejudiced the defense. Strickland v. Washington, 466 U.S. at 691-92. To meet this burden, Kessler must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington,  466 U.S. at 690-91. Kessler cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .  We are not interested

> in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992). Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)). See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

Kessler must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The state court rejected Kessler's claims of ineffective assistance of counsel, ruling that he failed to meet the Strickland test.

> When ineffective assistance is alleged, the burden is on the person seeking collateral relief to specifically allege the grounds for relief and to establish whether the grounds resulted in prejudice. Effective assistance of counsel does not mean that a defendant must be afforded errorless counsel or that future developments in law must be anticipated. Meeks v. State, 382 So. 2d 673 (Fla. 1980). In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the U.S. Supreme Court provided the following standard for determining ineffective assistance of counsel:
>
> > The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's

> performance was deficient. This requires showing that
> counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment. Second, the defendant must show that
> the deficient performance prejudiced the defense. This
> requires showing the errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable . . . .
> [T]he proper standard for attorney performance is of
> reasonably effective assistance.

466 U.S. at 686-687. In <u>Downs v. State</u>, 453 So. 2d 1102 (Fla. 1984), the Florida Supreme Court stated that the defendant must affirmatively prove prejudice. The test for prejudice is:

> [T]hat there is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would
> have been different. A reasonable probability is a probability
> sufficient to undermine confidence in the outcome.

<u>Strickland</u>, 466 U.S. at 694.

Respondent's Exhibit 6 at 191-92. Because the state court correctly recognized that <u>Strickland</u> governs Kessler's ineffective assistance of counsel claims, Kessler cannot meet the "contrary to" test in Section 2254(d)(1). Kessler instead must show that the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts.

<u>Ground One</u>:

In his challenge to the jury's determination of guilt in the VCR case, Kessler alleges five instances of ineffective assistance of counsel. The state court identified each claim as follows:

> In ground 1, Defendant claims ineffective assistance of counsel . . . due to
> counsel's failure to object at trial to the State's assertion that Defendant
> was a maintenance man with keys at the trailer park where the alleged
> crime took place and had access to the victim's dwelling. Defendant is
> referring to the following statement made by the prosecutor during opening
> statements:

- 8 -

> That's what the evidence is going to show that on between the time of July 15 through July 16 Arthur Kessler never had permission to enter into Mr. Hiott's residence who in the meantime, keep this in mind, used to live in Mr. Hiott's residence as well as was a maintenance man there.

(See Trial Transcript, Volume II, page 74, attached).  Defendant further claims that without this prejudicial statement, there could not have been the elements of a burglary because the alleged victim stated that the windows were sealed from the inside and the padlocks were secure from entry.

. . .

In ground 2a, Defendant claims ineffective assistance of counsel . . . due to counsel's failure to investigate and call exculpatory witnesses that would have and could have testified that the alleged victim "used" drugs with Defendant frequently when the alleged victim stated on the record that he did not know Defendant personally when the State questioned him.

. . .

In ground 2b, Defendant claims ineffective assistance of counsel . . . due to counsel's failure to call Janice DeBasschere, the manager of the trailer park, who would have testified that Defendant was not the maintenance man and did not have access to keys.

. . .

In ground 3a, Defendant claims ineffective assistance of counsel . . . due to counsel's use of the "mistaken identity" line of defense and counsel's attempt to hide Defendant's substance abuse problem when Defendant had already admitted that he had a drug problem.  Defendant further claims that he admitted that he had "taken" and "not stolen" the VCR to buy crack, but now contends that the alleged victim gave Defendant the VCR to get some more crack.  Defendant claims that when the alleged victim was not satisfied with the crack deal and had come down off of the crack, the alleged victim then decided to call the police.

. . .

In ground 3b, Defendant claims ineffective assistance of counsel . . . due to counsel's failure to investigate the alleged victim's prior history of making false complaints of "theft and burglary" and the fact that the alleged victim had psychological problems.  Specifically, Defendant claims the alleged victim had previously called the police regarding $2.50 that he claims was

> stolen out of his change jar along with videotapes that were not his, but belonged to Defendant's mother.
>
> . . .
>
> In ground 3c, Defendant claims ineffective assistance of counsel . . . due to counsel's failure to interrogate the victim about why he waited three (3) days to call the police when the alleged victim was at the trailer that weekend hiding from the manager who was attempting to collect the rent.
>
> . . .
>
> In ground 4, Defendant claims ineffective assistance of counsel . . . due to counsel's failure to file a motion to dismiss counts one through three of the information due to the fact that no burglary had taken place, no theft had taken place, and there was no basis for the offense of dealing in stolen property.
>
> . . .
>
> In ground 5, Defendant claims ineffective assistance of counsel . . . due to counsel's failure to investigate several exculpatory witnesses, namely Shirley Hathaway and Janice DeBasschere who could have provided names of other witnesses that lived in the trailer park who could have attested to the fact that Defendant was not a maintenance man at the trailer park and did not have access to keys. Defendant further claims that these witnesses would have and could have refuted the alleged victim's claim that he did not know Defendant other than that he was a maintenance man at the trailer park.

Respondent's Exhibit 6 at 192-98. The state court rejected the first claim based on Kessler's failure to meet the prejudice prong of the <u>Strickland</u> test.

> However, a review of the record reflects that at trial, Detective Albert Selke with the Hillsborough County Sheriffs Office testified that post <u>Miranda</u> Defendant told him that he entered into Mr. Hiott's residence lot number four, removed the VCR, and sold it for $12 to support his crack habit. (<u>See</u> Trial Transcript, Volume II, pages 138-139, and 150, attached). Detective Selke further testified that Defendant subsequently made the following written statement: "VCR, took VCR and sold for $12 for crack cocaine from lot four. I have a crack problem and I need help." (<u>See</u> Trial Transcript, Volume II, page 139, attached). Consequently, Defendant has failed to meet the second prong of <u>Strickland</u> in that he has failed to prove how counsel's alleged failure to object at trial to the State's alleged assertion

> resulted in prejudice when Defendant made an oral and written confession in which he admitted to Detective Selke that he entered into Mr. Hiott's residence lot number four, removed the VCR, and sold it for $12 to support his crack habit. Since Defendant has failed to meet the second prong of Strickland, it is unnecessary to address the performance component. See Kennedy v. State, 547 So. 2d 912, 914 (Fla. 1989). As such, no relief is warranted upon ground 1.

Respondent's Exhibit 6 at 193. The state court rejected each above-identified claim based on the same lack of prejudice because Kessler admittedly "took the VCR" and "sold it for $12."

Kessler argues that the state court's finding of lack of prejudice is unreasonable because his statement is an "admission" and not a "confession." Kessler offers no challenge to the content of either the oral or the written statement; Kessler only contests the characterization of the statement. Kessler's reasonableness argument is meritless.

Ground Two:

Kessler alleges that he pleaded guilty to the charges in both 00-13062 (theft of automobile wheel rims) and 00-13063 (theft of a gold necklace) because his trial counsel, Mr. Ray Lopez, was unprepared and had not investigated several witnesses. Although the Strickland standard controls a claim that counsel was ineffective in recommending that a client plead guilty, Hill v. Lockhart, 474 U.S. 52 (1985), Agan v. Singletary, 12 F.3d 1012 (11th Cir. 1994), greater evidence is needed to prove both deficient performance and prejudice if the client pleads guilty. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decided to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Wofford v. Wainwright, 748 F.2d

- 11 -

1505, 1508 (11th Cir. 1984). And to prove prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. at 59. After conducting two evidentiary hearings, the state court rejected the claim of ineffective assistance of counsel in the case involving the theft of wheel rims as follows:

> Defendant claims ineffective assistance of counsel due to counsel's alleged failure to investigate several witnesses that were available to testify that Defendant had purchased the alleged stolen rims from Eddie, an employee at Poole's Paint and Body Shop, and they were not stolen because the rims were purchased outside of the shop. Defendant claims counsel was aware of potential witnesses Shirley Hathaway, Janice DeBasschere, and Vic, an employee at Creekside and Riverside Trailer Park, and had a moral obligation to investigate these witnesses.
>
> In cases involving claims of ineffective assistance of counsel for failure to investigate and interview witnesses, facially sufficient postconviction motions must include: identity of prospective witnesses; substance of witnesses testimony; and explanation as to how omission of such evidence prejudiced outcome of trial. Highsmith v. State, 617 So. 2d 825 (Fla. 1st DCA 1993).
>
> With respect to Shirley Hathaway, she did testify that she heard Eddie tell Defendant that everything was ok with the rims. (See January 26, 2004, Transcript, page 31, attached). She further testified that she believed that she told Mr. Lopez about what she had heard. (See January 26, 2004, Transcript, page 31, attached). However, on cross-examination, she testified that the only thing she knew was that she overheard a conversation where someone by the name of Eddie said the rims are okay, but had no idea if the rims that were at Defendant's house were the same rims discussed with Detective Selke in reference to the theft case. (See January 26, 2004, Transcript, page 36, attached). Consequently, Defendant has failed to prove that Ms. Hathaway could have testified that Defendant had purchased the alleged stolen rims from Eddie when Ms. Hathaway did not know if the rims that were the subject of the conversation that she overheard were the same rims Officer Selke was investigating on the theft case. As such, no relief is warranted with respect to Shirley Hathaway.
>
> With respect to Janice DeBasschere, on February 10, 2004, she testified that she did recall having a telephone conversation with Mr. Lopez. (See

- 12 -

> February 10, 2004, Transcript, page 16, attached).  However, she failed to
> present any testimony regarding the alleged stolen rims.  (See February
> 10, 2004, Transcript, attached).  At the January 26, 2004, hearing,
> Defendant testified that he told Mr. Lopez that Ms. DeBasschere heard
> Eddie tell Defendant not to worry about the rims.  (See January 26, 2004,
> Transcript, page 15, attached).  Mr. Lopez testified that Defendant did give
> him the name of Ms. DeBusschere only regarding the alleged theft of the
> VCR.  (See January 26, 2004, Transcript, pages 45 - 46, attached).  He
> further testified that his investigator advised him that he spoke to Ms.
> DeBusschere.  (See January 26, 2004, Transcript, page 46, attached).
> However, Mr. Lopez did not present any testimony that he was informed,
> by either Defendant or Ms. DeBusschere, that Ms. DeBusschere was a
> potential witness in the case involving the theft of the rims.  (See January
> 26, 2004, Transcript, attached).  Consequently, Defendant has failed to
> prove that Ms. DeBusschere was available to testify that Defendant had
> purchased the alleged stolen rims from Eddie.  As such, no relief is
> warranted with respect to Janice DeBasschere.
>
> With respect to Vic, an employee at Creekside and Riverside Trailer Park,
> Vic never testified at either the January 26, 2004, or the February 10, 2004,
> evidentiary hearing.  (See January 26, 2004, Transcript, February 10,
> 2004, Transcript, attached).  Moreover, at the January 26, 2004, hearing,
> Mr. Lopez testified that he did not know who Vic was, he was not given any
> information regarding an individual named Vic, and if the case involving the
> rims had gone to trial, he would have looked into the possibility of calling
> him as a witness.  (See January 26, 2004, Transcript, pages 58 - 59,
> attached).  Consequently, Defendant has failed to prove that he advised
> Mr. Lopez about Vic or that Vic would have been available to testify that
> Defendant had purchased the alleged stolen rims from Eddie.  As such, no
> relief is warranted with respect to Vic.

Respondent's Exhibit 6 at 331-33.  Kessler faults counsel for not investigating these

witnesses.  The state court determined that none of the witnesses could help Kessler's

case.  Kessler objects to the state court's analysis, which focused on the lack of

prejudice, and contends that the court should have focused instead on counsel's lack of

investigation.  Kessler misunderstands; counsel's allegedly deficient investigation is not

ineffective assistance unless the deficiency causes prejudice, and Kessler was unable to

prove prejudice despite a two-day evidentiary hearing.  Strickland requires proof of both

- 13 -

deficient performance and prejudice.  Kessler fails to show that the state court's determination is unreasonable.[2]

The state court rejected the claim of ineffective assistance of counsel in the necklace case as follows:

> Defendant claims counsel should have investigated the actual owner of the gold necklace Shirley Hathaway who had a receipt for the gold necklace and had written a statement that the alleged victim Karen Middleton did not own the necklace and Defendant did not steal any of the jewelry.  At the January 26, 2004, hearing, Defendant testified that he was also charged with stealing some jewelry from his brother's girlfriend Karen Middleton.  (See January 26, 2004, Transcript, page 11, attached).  He further testified that he told Mr. Lopez that he had witnesses that were willing to testify about the ownership of some of the jewelry.  (See January 26, 2004, Transcript, pages 12-13, attached).  He testified that he told Mr. Lopez that his mother Shirley Hathaway could identify a fourteen karat gold rope chain that had belonged to her, that she had given to Defendant, and never belonged to Ms. Middleton.  (See January 26, 2004, Transcript, page 13, attached).  Defendant testified that his mother had a conversation with Mr. Lopez regarding the gold rope chain, but Mr. Lopez failed to act upon said

---

[2]  The state court summarily rejected a related claim—a claim not asserted in Kessler's federal petition—that trial counsel failed to adequately advise Kessler of possible defenses. The state court determined that in the case involving the theft of rims Kessler pleaded guilty against counsel's advice.

> A review of the record reflects that on April 17, 2001, the date Defendant entered his plea in case 00-13062, the Court asked Defendant's counsel if the plea was being entered with his approval, and Defendant's counsel responded as follows:
>
>> Yes, Judge, but for the record I'd like to make a couple of things known. First of all on count one on case 00-13062 I have explained to him that he may have [a] legal defense and in fact I have explained to him that in my opinion the State would not be able to establish a prima facie case.  He still wishes to enter a plea of no contest to that in order to resolve this today.
>
> (See April 17, 2001, Transcript, page 7, attached).  Therefore, Defendant's counsel informed the Court that he had discussed potential defenses in case 00-13062 with Defendant, and advised Defendant that he did not believe that the State could prove a prima facie case.  However, despite counsel's advice, Defendant still wished to enter a plea to the charges in case 00-13062.

Respondent's Exhibit 6 at 199. The above representation by counsel is located at Respondent's Exhibit 1 at 233.

- 14 -

information, and would not let his mother be a witness.  (See January 26, 2004, Transcript, pages 21-22, attached).

At the same hearing, Defendant's mother Ms. Shirley Hathaway testified that she told Mr. Lopez that she owned the fourteen karat gold rope chain Ms. Middleton claimed was stolen from her.  (See January 26, 2004, Transcript, pages 31 - 32, attached).  She further testified that she contacted Detective Selke on one occasion concerning the necklace.  (See January 26, 2004, Transcript, pages 34-35, attached).  However, when asked how she knew that the chain that was pawned was her chain, she testified, "Because it was pawned.  Because I gave it to Mr. Kessler and I know he pawned things."  (See January 26, 2004, Transcript, page 35, attached).  Lastly, when asked if she had personal knowledge as to what was pawned, she answered negatively.  (See January 26, 2004, Transcript, page 35, attached).

At the hearing, Detective Albert Selke testified that he was involved in an investigation which resulted in the arrest of Defendant in reference to three cases involving three thefts:  the theft of a VCR, the theft of jewelry, and the theft of tire rims.  (See January 26, 2004, Transcript, page 75, attached).  He further testified that he did speak with Defendant's mother Ms. Shirley Hathaway at least twice on the phone.  (See January 26, 2004, Transcript, pages 75 - 76, attached).  However, he testified that Ms. Hathaway never indicated to him that she was the owner of one of the gold necklaces that was taken during the robbery case 00-13063.  (See January 26, 2004, Transcript, pages 76 and 78, attached).

At the same hearing, Mr. Lopez testified that he recalled that Ms. Hathaway did advise him about the jewelry, and may have indicated that there was a gold chain that belonged to her.  (See January 26, 2004, Transcript, page 51, attached).  However, he further testified that the jewelry theft case did not go to trial, and when asked if he would have used said information if it had gone to trial, Mr. Lopez testified as follows:

> Probably, yes.  The two other cases that he entered a plea to, basically the Court set those cases for evidentiary hearing after he had been found guilty by the jury on the first case.  At that point Mr. Kessler had a decision to make whether or not he was going to enter a plea on those cases or whether or not he was going to proceed to trial on those other cases, obviously we would have gone a different route, as far as taking depositions and litigating the case fully.

(See January 26, 2004, Transcript, pages 51-52, attached).  Moreover, when asked what his reason was for not deposing the witnesses or

- 15 -

conducting any further investigation on the two cases Defendant pled out on, Mr. Lopez testified as follows:

> Well, because the issue was before us, are we going to trial, evidentiary hearing or are we going to enter a plea. If you enter a plea this is what could happen to you, these are your options. That's the stage we were at, because as a practical matter, even if we were somehow able to put on viable defenses or if the State could not prove those cases, then he would still be left hanging on the first case in which he was looking at a minimum of 30 years as a violent career criminal, even if we were to win those two cases. So at that point, as a practical matter, it didn't make much sense, he's taking a bigger risk by going to trial.

(See January 26, 2004, Transcript, pages 52 - 53, attached). Lastly, Mr. Lopez testified that he did recall, that at the time Defendant pled to the other two cases, he advised the Court that Defendant would be entering a plea to the jewelry case where Mr. Lopez thought Defendant had a viable defense.[3] (See January 26, 2004, Transcript, page 55, attached).

After reviewing this portion of ground 8, the testimony, evidence, and argument presented on January 26, 2004, and February 10, 2004, the court files, and the record, the Court finds that although Defendant and Ms. Hathaway both testified that they informed Mr. Lopez that the gold necklace belonged to Ms. Hathaway, and Mr. Lopez affirmed that Ms. Hathaway did tell him that the gold rope chain belonged to her, Ms. Hathaway was not able to testify that the gold rope chain that was pawned and the subject of the theft case was in fact the same gold rope chain that she gave Defendant. The Court further finds that Ms. Hathaway never presented any testimony regarding a receipt for the gold necklace or any testimony regarding a written statement. Consequently, Defendant has failed to meet the second prong of Strickland in that he has failed to prove how counsel's alleged failure to investigate the actual owner of the gold necklace Shirley Hathaway resulted in prejudice when Mr. Lopez was aware that Ms. Hathaway claimed to own the gold rope chain, and no evidence has been presented that Ms. Hathaway had a receipt for the gold necklace and had written the alleged statement. Since Defendant has failed to meet the second prong of Strickland, it is unnecessary to address the performance

---

[3] This is slightly inaccurate. Trial counsel's representation that Kessler pleaded guilty despite counsel's advice that a possible defense existed was regarding the wheel rims case and not the necklace case. See discussion at n.2.

- 16 -

> component.  See Downs v. State, 740 So. 2d 506, 518 n. 19 (Fla. 1999).
> As such, no relief is warranted upon this portion of ground 8.

Respondent's Exhibit 6 at 335-37.  The state court rejected Kessler's claim based on a credibility determinations and a findings of fact, specifically that the witness Kessler argues counsel failed to investigate is unable to present the testimony Kessler claims. Kessler fails to show that the state court's findings and determinations are unreasonable.

Accordingly, Kessler's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Kessler and close this action.

ORDERED in Tampa, Florida, on October 23, 2008.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE